Timothy W. SWIECKOWSKI, a Minor by S. Michael SWIECKOWSKI and Catherine S. Swieckowski, His Parents and Next Friends, S. Michael Swieckowski, Individually, and Catherine S. Swieckowski, Individually, Plaintiffs–Appellants and Cross–Appellees,

v.

CITY OF FORT COLLINS, a Colorado Municipal Corporation, Defendant–Appellee and Cross–Appellant,

and

K. Bill Tiley, Defendant–Appellee.

No. 94CA0393.

Colorado Court of Appeals, Div. V.

Nov. 24, 1995.

Rehearing Denied Jan. 18, 1996.

Certiorari Granted Sept. 9, 1996.

Cross–Petition for Certiorari Denied (Tiley) Sept. 9, 1996.

Kiel & Trueax, P.C., Joseph Kiel, Englewood, Pribila & Sokolow, P.C., Anthony L. Sokolow, Denver, for Plaintiffs–Appellants and Cross–Appellees.

Sommermeyer, Wick, Dow & Campbell, LLC, Kent N. Campbell, Steven G. Greenlee, Fort Collins, for Defendant–Appellee and Cross–Appellant.

Montgomery, Green, Jarvis, Kolodny & Markusson, P.C., Dennis H. Markusson, Peter S. Dusbabek, Fort Collins, for Defendant–Appellee.

David W. Broadwell, Denver, for Amicus Curiae Colorado Municipal League.

Opinion by Judge CASEBOLT.

In this personal injury action involving a bicycle accident, plaintiffs, Timothy W. Swieckowski, by and through his parents and next friends, S. Michael and Catherine A. Swieckowski, and his parents individually, appeal the summary judgment entered in

favor of defendant, K. Bill Tiley. Defendant, City of Fort Collins (City) cross-appeals the trial court's refusal to dismiss plaintiffs' claims against it. We reverse and remand for further proceedings.

The undisputed facts reveal that, in October 1990, fifteen year-old Timothy Swieckowski was riding his bicycle on a City street at night, without a light. Contrary to applicable traffic regulations, he was proceeding along the unmarked edge of the southbound lane of the roadway next to the curb and gutter.

At the point of the accident, a newer, wider portion of the roadway on which he was riding abruptly narrowed to an older portion. Swieckowski's bicycle continued straight where the roadway narrowed and his bicycle left the paved portion of the road, dropping him into a ditch and causing severe injuries.

The installed curb and gutter led straight to the ditch. There were no signs, guards, barriers, signals, or markings warning of the narrowing of the road or the ending of the curb and gutter, although there was a barricade at the end of the sidewalk. The sidewalk was approximately ten feet away from the curb and gutter.

The newer portion of the road, together with curbing, gutters, sidewalks, and bicycle paths had been constructed by Tiley, an adjacent landowner, pursuant to a land development agreement between himself and the City. In February 1989, Tiley had conveyed a right-of-way over a portion of his land to the City for purposes of widening and improving a section of the road. After the right-of-way was conveyed to the City, Tiley had hired an engineer to design the road and a contractor to build it. Both the design and construction were required to meet certain City specifications. The City had accepted the roadway and all improvements in November 1989.

In their action against the City and Tiley, plaintiffs asserted, as pertinent here, that Tiley and his agents had carelessly and negligently designed and constructed the modifications and improvements to the roadway and that he was further liable under a premises liability theory. As to the City, plaintiffs contended that the unmarked narrowing of the road was a dangerous condition of the roadway, caused by the City's negligent act or omission in constructing or maintaining the roadway.

Tiley filed a motion for summary judgment and the City moved to dismiss. The trial court granted Tiley's motion, determining that Tiley did not owe plaintiffs a duty of care as a matter of law. The court denied the City's motion made pursuant to the Governmental Immunity Act (GIA), § 24–10–101, C.R.S. (1988 Repl.Vol. 10A). The trial court certified those judgments as final, see C.R.C.P. 54(b), C.A.R. 1(a)(1), § 24–10–108, C.R.S. (1988 Repl.Vol. 10A), and this appeal followed.

I.

■ Plaintiffs assert that the trial court erred in granting summary judgment in favor of Tiley. Specifically, they argue: (1) that Tiley may be held liable as a vendor of real property because he created a dangerous condition on the land and subsequently transferred it in that condition to the City; and (2) that the trial court erred in dismissing Tiley from the action without considering their claim for relief based on negligent construction, which was independent from any allegation that Tiley was liable as a landowner. Because we agree that, under the circumstances as alleged, Tiley had a duty of care to the injured plaintiff that was possibly breached here, we agree in part with their first contention and, thus, conclude that summary judgment was inappropriate. In view of our ruling, we do not reach the second issue.

■ In an action premised upon negligence, whether a legal duty is owed by a particular defendant to a particular plaintiff as well as the scope of any such duty are questions of law which a court must determine. *Perreira v. State,* 768 P.2d 1198 (Colo. 1989). A court's conclusion as to the existence of a duty is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *University of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987).

■ Several factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequences of placing this burden on the defendant are all relevant. *Greenberg v. Perkins,* 845 P.2d 530 (Colo.1993).

■ These factors, however, are not exclusive; a court may consider any other relevant factors based on the competing individual and social interests implicated by the facts of the case. *Perreira v. State, supra.* The question is essentially one of fairness under contemporary standards; that is, whether reasonable persons would recognize and agree that a duty of care exists. *Taco Bell, Inc. v. Lannon,* 744 P.2d 43 (Colo.1987).

■ Generally, a duty of care is owed with regard to a person's affirmative conduct and such a duty extends to all who may be foreseeably injured if that conduct is negligently carried out. *Greenberg v. Perkins, supra.*

■ Plaintiffs and Tiley both urge us to declare that the Restatement (Second) of Torts §§ 352 & 353 (1965) are reflective of the applicable duty and they analyze a number of cases from other jurisdictions to support their proposition. Restatement § 352 provides:

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Restatement § 353 then delineates specific exceptions to the general rule of nonliability.

However, by its specific terms Restatement § 352 requires that the dangerous condition exist at the time that the vendee takes possession, a factor that, according to the undisputed facts, is absent here. The parties agree that Tiley conveyed the right-of-way to the City pursuant to an acceptance of the subdivision plat in February 1989. It was only *after* conveyance of the right-of-way occurred that the improvements were constructed. Consequently, no dangerous condition existed at the time Tiley conveyed the right-of-way to the City, and thus, those sections of the Restatement cited, even if we assume that they state the applicable law in Colorado, are not relevant.

■ The duty applicable to landowners who own property adjacent to public ways was stated in *Ellsworth v. Colorado Beverage Co.,* 150 Colo. 19, 370 P.2d 159 (1962). In *Ellsworth,* a customer of the defendant slipped and fell on a city street adjacent to defendant's building. In rejecting the contention that the defendant owed the customer a duty to maintain the public street in a safe condition, the supreme court stated, as the applicable general rule:

'In the absence of statute the owner or occupant of adjoining property is under no obligation to repair the street in front of his premises, and is not liable for an injury arising from a defect therein *which does not result from his affirmative act, or that of his agent or servant....*'

*Ellsworth v. Colorado Beverage Co., supra,* 150 Colo. at 23, 370 P.2d at 161 (emphasis added).

Hence, no duty generally exists, except when the defect is created by the abutting owner. *See also Cool v. Vesey,* 31 Colo.App. 1, 499 P.2d 642 (1972) (stop-box installed by defendant in city right-of-way which benefitted defendant's property gave rise to duty of care); *Sill v. Lewis,* 140 Colo. 436, 344 P.2d 972 (1959) (defendant liable for injuries caused by ice when he discharged water onto sidewalk); *Bittle v. Brunetti,* 750 P.2d 49 (Colo.1988) (citing cases finding no liability for ice and snow hazards unless affirmatively created by landowner); E. McQuillin, *Municipal Corporations* § 54.42.20 (3d ed. 1994) (no liability by abutting owner for defect in public way unless created by landowner); Annot., *Liability of Abutting Owner or Occupant for Condition of Sidewalk,* 88 A.L.R.2d 331 (1963) (stating, at § 24, an exception to general rule of nonliability when acts of independent contractor affirmatively create dangerous condition).

Moreover, this formulation of a duty under such circumstances is also consistent with Restatement (Second) of Torts § 350 (1965) which provides:

A possessor of land over which there is a.... public highway is subject to liability for physical harm caused to travelers thereon by a failure to exercise reasonable care in creating or maintaining in reasonably safe condition any structure or other artificial condition created or maintained in the highway by him or for his sole benefit subsequent to its dedication.

Here, it is undisputed that Tiley conveyed a right-of-way, that an engineer hired by Tiley designed the roadway, and that a contractor hired by Tiley built the roadway.

▬▬ Furthermore, plaintiffs specifically alleged that Tiley and his agents affirmatively created a hazard in the roadway by, *inter alia*, carelessly and negligently designing and constructing the modifications and improvements to the roadway and failing to erect signs, signals, markings, guards, barricades, and railings. They further alleged that he failed to warn of the condition he had created. While Tiley's engineer may well have designed the improvements to conform to certain City specifications and Tiley's contractor may have constructed the improvements exactly as designed and specified, such factors would bear upon whether Tiley or his agent was negligent, not whether they owed plaintiffs a duty of care. Hence, the general rule that an abutting owner is not liable for conditions existing upon the public way because he does not own, possess, or control it, *see Bittle v. Brunetti, supra,* is not applicable here.

The imposition of a duty when an adjacent landowner acts affirmatively to create a dangerous condition is also consistent with the application of a general duty analysis as articulated in *Perreira v. State, supra*. First, the risk involved is substantial in that it involves a potential for serious personal injury to child bicycle riders. In addition, it is foreseeable that child bicyclists may ride against oncoming traffic on a portion of the roadway designated for such travel, even though such action is contrary to applicable traffic regulations. And, unless appropriately warned or prevented by barricades from continuing straight, the likelihood of injury at night for a child in these circumstances is significant.

Further, while the social utility of Tiley's conduct in designing and constructing the roadway is significant, in part because it relieves the City and its taxpayers from the expense of doing so, nevertheless, the magnitude of the burden of guarding against the harm is not momentous; the cost of reflectors, warning signs, barricades, or reflective paint is insignificant compared to the costs of designing and building the entire roadway. And, since the design and construction of the roadway directly benefitted Tiley by garnering approval of his subdivision by the City, the consequences of placing the burden upon Tiley are slight under these circumstances. Further, Tiley voluntarily agreed to design and construct the roadway and could have, by negotiation, either provided for the risk, shifted it, or obtained indemnification concerning it either from the City or from his agents who designed and built the roadway.

We further specifically note that issues concerning the status of Tiley's agents, *i.e.,* as employees or independent contractors, and whether their acts or omissions are imputable to Tiley, are not raised here and thus we do not address them.

Accordingly, the trial court erred in granting summary judgment on this claim.

## II.

▬▬ In its cross-appeal, the City contends that the trial court erred in failing to dismiss plaintiffs' claims against it, arguing that any "dangerous condition" of the roadway, within the meaning of the GIA, was the result of its design rather than any construction or maintenance performed by the City and that, therefore, the claims were barred by the GIA. We agree.

Under § 24–10–106(1)(d)(I), C.R.S. (1995 Cum.Supp.), sovereign immunity is waived by a public entity in an action for injuries resulting from a "dangerous condition" of any public highway, road, or street "which physically interferes with the movement of traffic on the paved portion" of that street. A dangerous condition is defined in pertinent part as:

  a physical condition of a facility or the use thereof which constitutes an unreasonable

risk to the health or safety of the public ... and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility ... *A dangerous condition shall not exist solely because the design of any facility is inadequate.*

Section 24–10–103(1), C.R.S. (1995 Cum. Supp.) (emphasis added). Thus, under the GIA, negligence in design is specifically excepted from the definition of a dangerous condition.

■ When a condition is the result of the design of a public roadway, characterization of the condition as resulting from negligent construction or maintenance is insufficient to avoid the bar of governmental immunity. *Willer v. City of Thornton,* 817 P.2d 514 (Colo.1991) (allegation of negligent construction or maintenance of road because of dip or depression was more properly characterized as negligent design); *Szymanski v. Department of Highways,* 776 P.2d 1124 (Colo.App. 1989) (allegations of existence of blind spot, improper sightlines, excessive speed limit, and absence of warning signs were allegations of negligent design of intersection, not negligent construction or maintenance).

■ Sovereign immunity issues, being issues which affect subject matter jurisdiction, are to be determined in accordance with C.R.C.P. 12(b)(1) standards. Any factual dispute upon which the existence of jurisdiction may turn is for the trial court to resolve. Appellate review of a trial court's factual determinations is based upon the highly deferential, clearly erroneous standard. *Trinity Broadcasting v. City of Westminster,* 848 P.2d 916 (Colo.1993).

■ However, the trial court need only act as a fact finder if it must resolve conflicting evidence in making its determination. If, as here, the underlying facts are undisputed, the issue is one of law, and we are not bound by the trial court's determinations. *See Johnson v. Regional Transportation District,* 916 P.2d 619 (Colo.App.1995).

Here, the trial court determined that the City, after completion of the improvements by Tiley, accepted the roadway and did not perform any maintenance or construction upon those improvements. However, it then concluded:

Here, the nature of the street was constructed [such] that the pavement ended at the ditch and diversion facility described by the evidence. The court has found that the manner of constructing and maintaining the street did constitute a risk to the safety of the public using the street. The court is not basing its ruling on design or lack of signage but the physical condition of the street itself.

We disagree with this determination.

The statutory terms "design," "construction," and "maintenance" are not specifically defined in the statute. Hence, we must resort to general rules of statutory interpretation and construction.

■ In interpreting any statute, we must ascertain and give effect, if possible, to the intent of the General Assembly. *Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985). Our construction of the statute should be the one that best effectuates the purposes of the legislative scheme. *Smith v. Myron Stratton Home,* 676 P.2d 1196 (Colo.1984). To that end, we give the statutory terms their plain and ordinary meaning. *Dunlap v. Colorado Springs Cablevision, Inc.,* 855 P.2d 6 (Colo. App.1992).

Generally, "design" means to conceive or plan out in the mind; to devise, contrive, to lay out, *see Mission Viejo v. Board of Equalization,* 881 P.2d 462 (Colo.App.1994), whereas "construction" means the act of putting together to form a complete, integrated object, *see* Webster's Third New International Dictionary 489 (1986), *i.e.,* to implement and build that which was designed. Further, "maintain" means to keep the constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency as initially constructed. *See* Webster's Third New International Dictionary 1362 (1986).

Additionally, because there is a differentiation in the statute between negligence in

design and negligence in construction or maintenance, we conclude that the General Assembly must have intended that each term should have a different meaning within the definition of "dangerous condition."

We further note that, in 1992, the General Assembly added to § 24–10–103(1), C.R.S. (1995 Cum.Supp.) the following sentence:

> Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.

While this section took effect after the injury in this action occurred and thus is not directly applicable here, nevertheless, the legislative history of this section indicates that it was added to the GIA to explain the meaning of the original term "maintenance," see Hearings on H.B. 1291 before the House Local Government Committee, 58th General Assembly, Second Session (February 17, 1992), and thus it is instructive.

Hence, using these definitions of the statutory terms, we conclude that the complaint and the facts presented by plaintiffs present solely a negligent design claim against the City. As in *Willer v. City of Thornton, supra,* the complaint and facts do not demonstrate that any of the *City's* acts in constructing and maintaining the roadway differed in any way from the provisions for construction and maintenance of the roadway contained in the initial design. The construction implemented and built that which was designed and did not deviate from the design. As to maintenance, the City did not fail to keep the facility in the same general state of being, repair, or efficiency as initially constructed or affirmatively change that state of being.

It is undisputed that the roadway was constructed in accordance with the design and specifications created by Tiley's engineer and as approved by the City's engineers. The design of the roadway called for the widening of the road to stop at the boundary along which the ditch ran, although it should be noted that bicycle and other traffic flowing in the proper direction would perceive the widened portion of the roadway as the "beginning" of that widened section of the road, rather than its "end."

Additionally, the design did not call for any bridge to be built or culvert to be extended; it did not call for the ditch to be filled; it did not call for the part of the roadway to turn or taper so as to avoid the ditch; it did not call for there to be any barricades, walls, fences, or any other kinds of safety devices at the end of the roadway. Rather, like the sharp dip in *Willer v. City of Thornton, supra,* the sharp ending of the widened road here was part of the original design.

■ Contrary to plaintiffs' argument, the fact that these are "omissions" in the design does not alter the fact that any "dangerous condition" of the roadway as to the City under the GIA was solely the result of design. From a logical standpoint, we find plaintiffs' attempts to classify design omissions as analytically distinct from deliberate design decisions to be meaningless. For example, one could characterize the roadway as one which was deliberately designed to run straight to the side of the ditch, or as one which was not designed to turn before the ditch, but the result is the same. Either way, the design of the roadway is what is being discussed. Moreover, we find no support in the language of the GIA for the distinction urged by plaintiffs. *See* § 24–10–103(1), C.R.S. (1995 Cum.Supp.) (dangerous condition may consist of either act or omission).

■ Furthermore, while it is true, as plaintiffs contend, that the drainage inlet and ditch pre-existed the design of the improvements and was not created by the design, nevertheless the dangerous condition or the hazard presented by the ditch was created or caused by the design of the roadway. The drop-off into the ditch was "created," in the sense that it became operative as a dangerous condition, only because the design of the roadway narrowed there. Consequently, the "dangerous condition" exists, vis a vis the City, "*solely* because of the design of the roadway." *See* § 24–10–103(1), C.R.S. 1988 Repl.Vol. 10A).

■ Plaintiffs' attempts to distinguish this case from *Szymanski v. Department of Highways, supra,* and *Willer v. City of Thornton, supra,* on the basis that the ditch

was a "physical feature separate and apart from the design" are unpersuasive. Initially, we note that the cited cases do not support this distinction because neither opinion specifies whether a physical feature was involved. Moreover, the existence and location of the ditch are important only as they relate to the design of the road. As stated by the City: "It is the design that brought the road and the ditch together."

Because we conclude that the GIA bars the plaintiffs' claims against the City, we need not address the City's remaining arguments.

The judgment is reversed and the cause is remanded with directions to dismiss with prejudice the plaintiffs' claims against the City, to reinstate the claims for relief against Tiley, and for further proceedings consistent with the views expressed in this opinion.

DAVIDSON and ROY, JJ., concur.