20CA1322 Palmer v Berthoud 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA1322 Larimer County District Court No. 20CV30191 Honorable Daniel M. McDonald, Judge Kina Palmer, Plaintiff-Appellant, v. Town of Berthoud, Colorado, a public municipal entity organized under the laws of the State of Colorado, Defendant-Appellee. JUDGMENT AFFIRMED Division V Opinion by JUDGE RICHMAN Harris and Gomez, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Wilcox Law Firm, LLC, Ronald L. Wilcox, Denver, Colorado; Law Office of Michael P. Fossenier, LLC, Michael P. Fossenier, Denver, Colorado, for Plaintiff-
Appellant Tucker Holmes, P.C., Bradley D. Tucker, Winslow R. Taylor, III, Centennial, Colorado, for Defendant-Appellee 
1 ¶ 1 Plaintiff, Kina Palmer, appeals the district court’s dismissal of her personal injury action against defendant, the Town of Berthoud (Berthoud). We affirm. I. Background ¶ 2 Palmer brought this action against Berthoud after she slipped and fell on a patch of snow-covered ice on a public sidewalk adjacent to the Berthoud Parks and Recreation Department building. ¶ 3 She alleged, and Berthoud conceded, that the sidewalk was constructed and maintained by Berthoud. She further alleged that “[b]uilt into this subject public sidewalk when constructed by Defendant was a ‘depression’ or ‘sloping’ in the sidewalk which resulted in drainage problems which caused snow and ice melt to accumulate and pool in the depression, where pooled water would freeze when temperatures were below 32 degrees Fahrenheit.” She also alleged that the depression or sloping was, at least in part, a maintenance defect because approximately twenty years had elapsed since construction of the sidewalk, allowing the slabs to settle further. In addition, she alleged that Berthoud had failed to 
2 timely remove the snow and ice pursuant to its own snow and ice removal plan. ¶ 4 According to Palmer, Berthoud’s conduct created a “dangerous condition,” and it therefore waived its governmental immunity pursuant to section 24-10-106(1)(d)(I), C.R.S. 2021, of the Colorado Governmental Immunity Act (CGIA). She did not allege, nor does she argue on appeal, that liability was waived under section 24-10-106(1)(d)(I) due to a “particular dangerous accumulation” of snow or ice. ¶ 5 Berthoud moved to dismiss Palmer’s complaint for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), contending, among other things, that the snow and ice on the sidewalk were not a dangerous condition because the “mere existence” of snow and ice is not, by itself, a dangerous condition as that term is defined in section 24-10-103(1.3), C.R.S. 2021, and incorporated in section 24-10-106(1)(d)(I). Thus, Berthoud asserted that it did not waive its governmental immunity. ¶ 6 The district court held an evidentiary hearing pursuant to Trinity Broadcasting of Denver, Inc. v. City of Westminster, 848 P.2d 916 (Colo. 1993). At the hearing, Berthoud also argued that, 
3 according to the testimony, any depression in the sidewalk was due solely to inadequate design, a flaw that does not constitute a dangerous condition under section 24-10-103(1.3). ¶ 7 In a thorough written order, the district court concluded that (1) Palmer was injured due to the “mere existence” of snow and ice, precluding a finding that Berthoud had created a dangerous condition; (2) even if the snow and ice might have otherwise constituted a dangerous condition, the ice patch was present solely due to inadequate design; and (3) even if a dangerous condition was present due to a “particular dangerous accumulation” of snow and ice, Berthoud had no actual notice of the accumulation and did not have a reasonable time to remove or mitigate the snow and ice, precluding waiver under section 24-10-106(1)(d)(I). Thus, the court concluded Berthoud did not waive its governmental immunity. ¶ 8 Palmer appeals the district court’s dismissal, contending that the court erroneously (1) concluded that the snow and ice were present because the sidewalk was inadequately designed; and (2) applied the “particular dangerous accumulation” standard to her claim instead of the broader “dangerous condition” standard. See § 24-10-106(1)(d)(I). 
4 II. Standard of Review ¶ 9 When a public entity moves to dismiss a personal injury case on grounds that it has not waived its immunity under the CGIA, the entity raises a question of subject matter jurisdiction that must be resolved pursuant to Rule 12(b)(1). Trinity, 848 P.2d at 923. Under Rule 12(b)(1), a plaintiff has the burden of proving that the court has subject matter jurisdiction, and the court may make all factual findings necessary for that determination. Medina v. State, 35 P.3d 443, 452 (Colo. 2001). The court need not treat a plaintiff’s factual allegations as true as it would under C.R.C.P. 12(b)(5). Medina, 35 P.3d at 452. ¶ 10 We will not disturb a district court’s findings of jurisdictional fact unless they are clearly erroneous. Id. A finding of fact is clearly erroneous only where it is not supported by competent and adequate evidence in the record. Shandy v. Lunceford, 886 P.2d 319, 322 (Colo. App. 1994). To the extent that relevant facts are undisputed, a plaintiff is entitled to the reasonable inferences raised by those facts. City & Cnty. of Denver v. Dennis, 2018 CO 37, ¶ 11. Once questions of fact are resolved, we review de novo legal questions of governmental immunity. Id. at ¶ 12. 
5 III. The CGIA ¶ 11 Under the CGIA, public entities are generally immune from liability in “all claims for injury which lie in tort or could lie in tort.” § 24-10-106(1). However, the General Assembly has waived sovereign immunity in actions for injuries that resulted from “[a] dangerous condition . . . which physically interferes with the movement of traffic on . . . any public highway, road, street, or sidewalk within the corporate limits of any municipality . . . .” § 24-10-106(1)(d)(I); City of Aspen v. Meserole, 803 P.2d 950, 957 (Colo. 1990). A dangerous condition is either a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility. § 24-10-103(1.3). As noted, the “mere existence” of snow and ice does not, by itself, constitute a dangerous condition. Id. And the statute provides that a dangerous condition “shall not exist solely because the design of any facility is inadequate.” Id. Thus, as a threshold jurisdictional matter, a plaintiff must show that the 
6 dangerous condition arose due to government conduct, or lack thereof, in maintaining or constructing the condition, and not due to the government’s design. Swieckowski v. City of Fort Collins, 934 P.2d 1380, 1384 (Colo. 1997); see also Medina, 35 P.3d at 448. IV. Inadequate Design ¶ 12 We first address Palmer’s contention that the district court erred by concluding that any “dangerous condition was a result of inadequate design as opposed to negligent construction or maintenance.” A. Factual Findings ¶ 13 In drawing this conclusion, the court made factual findings that “there was almost no evidence that negligent construction or maintenance caused the depression resulting in ice on the sidewalk” and “the design was such that ice accumulated.” The district court relied on the following evidence, or lack thereof, to support its findings: • The director of the Parks and Recreation Department, Jeremy Olinger, submitted an affidavit stating, “The sidewalk where Plaintiff fell is the original sidewalk built approximately in 1998. The sidewalk is adjacent to a hill 
7 and water runs down the hill, across the sidewalk, and into the gutter by design.” • Based on Olinger’s affidavit, her own observation of the scene, and photos of the sidewalk taken after the fall, Palmer’s expert witness, Anne Stodola, testified that the sidewalk was “designed . . . as conduit . . . for fluid to go across the sidewalk.” • She opined this system is “lax in engineering principles, because it’s not taking into account the failure mode that can occur when water . . . is destructive for the system” and it shows Berthoud “was not taking into account all the engineering principles.” • Stodola did not review original plans for the sidewalk or historical photographs of the area. • There was no evidence that the sidewalk had sunk over time or that the landscaping around it had been further elevated, creating a low spot. • Stodola “did not testify to, nor was she qualified to opine on, any failures in construction or maintenance of the sidewalk.” 
8 ¶ 14 The court’s factual findings are not clearly erroneous because they are supported by competent and adequate evidence in the record. Olinger stated that water ran off the hill and onto the sidewalk by design, and Stodola explicitly based her opinion on Olinger’s view that the sidewalk was designed as a “conduit” after stating that part of her job was to analyze “accidents that involve sidewalk design.” She also called the sidewalk a “design hazard,” opined that a “chase drain” should be installed to route water under the sidewalk, and stated, “I’m sure that there would be more ways that one can design it.” ¶ 15 She conceded that her expert report did not include an opinion on, or an assessment of, the precise cause of any potential post-construction settling and that she “didn’t see the design, the as-built drawings.” She further conceded that her opinion that the sidewalk had settled was drawn from the fact that it “deviates from the other 200 feet” of sidewalk around it, not from any specific evidence of settling. ¶ 16 As noted, the burden was on plaintiff to demonstrate her theory that, rather than a design issue, negligent maintenance by Berthoud proximately caused the condition. Although Palmer’s 
9 expert also testified that her opinion that the sidewalk constituted a dangerous condition was based on “a maintenance standard, a construction standpoint” and that “through the maintenance, [Berthoud] had failed to keep water from running across this area,” the district court was not required to credit her characterization of the condition as a maintenance or a construction flaw.
1 See Medina, 35 P.3d at 459 n.7 (noting that a court is not bound by an expert’s conclusory categorization of a hazard because an expert may not understand the legal distinctions between “maintenance” and “design” as they are used in the CGIA). Therefore, we perceive no clear error in the district court’s findings of fact. 1 As the district court noted, there was virtually no evidence of the manner in which the sidewalk was constructed, although Stodola occasionally referred to her opinion as coming from a “construction standpoint.” Moreover, Palmer’s briefs do not adequately explain her theory that negligent construction was an issue. We therefore decline to further consider whether the district court erred by concluding that negligent construction was not a cause of Palmer’s injuries. See In re Estate of Hope, 223 P.3d 119, 121 (Colo. App. 2007) (declining to address arguments that were “perfunctorily asserted”). 
10 B. Legal Conclusion ¶ 17 As noted in Medina, the question of whether a dangerous condition arose due to inadequate design rather than maintenance is “arguably a legal determination.” Id. Insofar as the court’s conclusion was based upon the legal determination that, if the ice and snow created a dangerous condition, the condition arose solely from inadequate design, we perceive no error. ¶ 18 In Swieckowski, the supreme court explained the legal difference between maintenance hazards and design hazards. 934 P.2d at 1384-87. It defined maintenance as “keeping a constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency as initially constructed.”
2 Id. at 1385 (quoting Webster’s Third New International Dictionary 1362 (1986)). Section 24-10-103(2.5) of the CGIA further explains that maintenance does not include any duty to “modernize, modify, or improve the design or construction of [the] facility.” By contrast, to design is “to conceive or plan out in the mind.” Swieckowski, 934 2 This definition was later substantially incorporated into the CGIA in section 24-10-103(2.5), C.R.S. 2021. 
11 P.2d at 1386 (citing Webster’s Third New International Dictionary 611 (1986)). ¶ 19 Based on these definitions, the supreme court has stated that an injury is the result of negligent maintenance when a dangerous condition “is allowed to develop subsequent to the initial design and construction,” whereas an injury is the result of negligent design when the dangerous condition is “inherent in the design itself and is allowed to persist to the time of the injury.” Medina, 35 P.3d at 456. The scope of the public entity’s duty, and the associated waiver, must therefore be measured by comparing the original condition of the facility to the condition of the facility when the injury occurred. Id. at 448-49. “Only after making this determination can the trial court ascertain whether the dangerous condition . . . developed through a lack of maintenance subsequent to the initial design and construction of the [facility], and thus, whether immunity has been waived.” Id. at 449. ¶ 20 Although Palmer had the burden of proof on this issue, the only evidence she presented at the hearing regarding the original state of the sidewalk was Olinger’s statement that “water runs down the hill, across the sidewalk, and into the gutter by design”; his 
12 testimony that, as far as he knew, nobody had altered the sidewalk since it was constructed; and Stodola’s speculative testimony that the sidewalk had settled because it was designed to have water run across it throughout the year and the spot where Palmer fell “deviated” from the rest of the sidewalk. The court noted that this evidence was insufficient to support a finding that “the sidewalk and landscaping was not designed this way or that this low spot did not exist in the past.” Based on the contrary evidence that Berthoud planned for excess water to run down the hill and onto the sidewalk — evidence credited by the court in its factual findings — the court did not err in concluding that, if the ice and snow created a dangerous condition, it arose solely due to inadequate design. ¶ 21 Because Palmer has not prevailed on this threshold issue, we need not address her additional contention that the district court applied the wrong legal standard to the remaining elements of her claim. Under either standard articulated in section 24-10-106(1)(d)(I), Palmer cannot prevail if her injuries were caused solely by a design flaw. 
13 V. Conclusion ¶ 22 We affirm the judgment. JUDGE HARRIS and JUDGE GOMEZ concur.