2012 COA 190

Marc A. GIULIANI; Footprints Health and Wellness, Inc., a Colorado corporation; Christopher Peck; and Frank Campbell, Plaintiffs–Appellants,

v.

JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, a body politic on behalf of the County of Jefferson; Jefferson County Division of Planning and Zoning, a division of Jefferson County; and Jefferson County Board of Adjustment, a division of Jefferson County, Defendants–Appellees.

No. 11CA1919.

Colorado Court of Appeals, Div. I.

Nov. 1, 2012.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

Hoban & Feola, LLC, Robert T. Hoban, Lauren C. Davis, C. Adam Foster, Denver, Colorado, for Plaintiffs–Appellants.

Ellen G. Wakeman, County Attorney, Eric T. Butler, Assistant County Attorney, Golden, Colorado, for Defendants–Appellees.

Opinion by Judge TAUBMAN.

¶ 1 In this action concerning whether a county may prohibit the operation of a medical marijuana dispensary[1] as a non-permitted use under a local zoning plan, plaintiffs, Marc A. Giuliani and Footprints Health and Wellness, Inc. (collectively Providers), and Christopher Peck and Frank Campbell (collectively Patients), appeal the trial court's orders partially dismissing their claims and affirming the resolution of the Jefferson County Board of Adjustment (the Board). They also appeal the trial court's summary judgment in favor of defendants, the Jefferson County Board of County Commissioners (BOCC), the Board, and the Jefferson County Division of Planning and Zoning (collectively the County). We dismiss as moot the portion of the appeal challenging the dismissal of the claims for injunctive and declaratory relief, and we affirm the dismissal as to all other claims.

## I.   Factual and Legal Background

### A.   Facts

¶ 2 The Providers leased a commercial unit in a shopping center located in unincorporated Jefferson County in September 2009 for the purposes of operating a medical marijuana dispensary. Believing that this use would be compatible with the official development plan (ODP) of the shopping center, as zoned, the Providers hired a contractor to perform tenant improvements on the property and obtained various permits from the County. None of the permit applications stated that the planned use of the property was a medical marijuana dispensary.

¶ 3 In late October 2009, the Providers opened their dispensary for business. Two months later, the zoning administrator, charged with the interpretation and enforcement of zoning in the county, issued a zoning violation notice to the Providers. The notice stated that the operation of a medical marijuana dispensary was not a permitted use in the shopping center's zoning district.

¶ 4 The Providers appealed the zoning violation to the Board. After hearing testimony by the zoning administrator, Giuliani, the Providers' attorney, and several patient-customers of the dispensary, the Board affirmed the zoning administrator's conclusion that the dispensary was not a permitted use in the shopping center.

¶ 5 The Providers filed this action in May 2010, seeking declaratory and injunctive relief and money damages. In March 2011, the Patients were permitted to intervene and joined the Providers' claim that the County was preempted by Amendment 20 to the Colorado Constitution from interpreting its zoning regulations so as to impose a de facto ban on medical marijuana dispensaries. At no time did the Providers or the Patients seek to amend their complaints to allege any claims under the Colorado Medical Marijuana Code, sections 12–43.3–101 to –1001, C.R.S.2012, which became effective July 1, 2010. The Code regulates both established locally approved businesses for, inter alia, the sale of medical marijuana, existing on July 1, 2010, as well as prospective new businesses. § 12–43.3–103(1)(a), C.R.S.2012.

¶ 6 The trial court granted in part the County's motion to partially dismiss the Providers' and the Patients' complaint. It then denied the Providers' and the Patients' request for a preliminary injunction. In a separate order, it affirmed the Board's resolution that the dispensary was not a permitted use. Finally, it granted the County's motion for summary judgment on all remaining claims.

### B.   Legal Framework

¶ 7 In November 2000, Colorado voters passed Amendment 20, thereby adding article XVIII, section 14 to the Colorado Constitution. This article permits patients to possess and use medical marijuana without criminal prosecution in certain circumstances. *See generally Beinor v. Indus. Claim Appeals Office,* 262 P.3d 970, 975–76

1.   Although the Providers' establishment is categorized as a "medical marijuana center" under the current statutes governing the use and distribution of medical marijuana, §§ 12–43.3–104, – 402, C.R.S.2012, this action was filed prior to the statute's enactment. We therefore refer to this facility by its commonly used name.

(Colo.App.2011). It also states in relevant part:

No person, including a patient or primary care-giver, shall be entitled to the protection of this section for his or her acquisition, possession, manufacture, production, use, sale, distribution, dispensing, or transportation of marijuana for any use other than medical use.

Colo. Const. art. XVIII, § 14(2)(d).

¶ 8 In response to Judge Loeb's special concurring opinion in *People v. Clendenin,* 232 P.3d 210, 217 (Colo.App.2009), and increased medical marijuana use and sales, the General Assembly enacted the Code in the 2010 legislative session to regulate dispensaries. *See generally* Sean T. McAllister, *The New, More Regulated Frontier for Medical Marijuana,* 39 The Colorado Lawyer 29 (Nov.2010).

¶ 9 In relevant part, the Code allows local governments through a majority of registered voters or a majority of members of a locality's governing board "to prohibit the operation of medical marijuana centers, optional premises cultivation operations, and medical marijuana-infused products manufacturers' licenses." § 12–43.3–106, C.R.S.2012 ("local option" provision); *see also* § 12–43.3–310, C.R.S.2012 (a county, municipality, or city and county may prohibit such uses). Local governments are also empowered to enact reasonable regulations or other restrictions on the distribution of medical marijuana that are more restrictive than the state's regulations, based on their local zoning, health, safety, and public welfare laws. § 12–43.3–310.

¶ 10 Pursuant to this authority, the BOCC in July 2010 approved a resolution prohibiting businesses that cultivate, manufacture, or sell marijuana or marijuana products within unincorporated Jefferson County. Resolution CC 10–285 (July 6, 2010).

¶ 11 Although the Code was not in effect when the Board denied the Providers' petition for review in April 2010, or when the Providers filed their action in May 2010, it currently prescribes the regulation of medical marijuana dispensaries in Colorado. Because neither the Providers, the Patients, nor the County addressed how the Code affects the issues raised on appeal, we requested supplemental briefing from the parties to determine whether any or all of the Patients' and the Providers' claims are moot in light of the Code's enactment.

## II. Mootness

¶ 12 In its supplemental brief, the County asserts that the Patients' and Providers' claims for prospective relief are moot, because the Code would prevent the Providers from operating a medical marijuana dispensary in unincorporated Jefferson County even if they prevailed on their claims for injunctive and declaratory relief. The Patients and the Providers, however, assert that these claims are not moot because (1) article XVIII, section 14, of the Colorado Constitution creates a constitutional right to operate a medical marijuana business, and (2) section 38–1–101(3)(a), C.R.S.2012, allows the Providers' medical marijuana business to operate under a "grandfathering" provision. We disagree with the Patients and the Providers and conclude that their claims for prospective relief are moot.

¶ 13 "The central question in a mootness problem is whether a change in the circumstances that prevailed at the beginning of litigation has forestalled the prospect for meaningful relief." *Zoning Bd. of Adjustment v. DeVilbiss,* 729 P.2d 353, 356 (Colo. 1986); *see also Gresh v. Balink,* 148 P.3d 419, 421 (Colo.App.2006)("A case is moot when the relief sought, if granted, would have no practical legal effect on the controversy.").

¶ 14 Additionally, new legislation can cause a case to be moot when it forecloses the prospect of meaningful relief. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (where new legislation precluded relief, the petitioner's claim was moot); *Ovadal v. City of Madison, Wis.,* 469 F.3d 625, 628–29 (7th Cir.2006) (same); *Van Schaack Holdings, Ltd. v. Fulenwider,* 798 P.2d 424, 427 (Colo. 1990)(while Colorado courts are not bound by the federal law regarding mootness, federal case law is useful as guidance); *Johns v. Powell,* 190 Colo. 88, 89–90, 543 P.2d 1261,

1262 (1975)(issue of prospective relief was rendered moot by new legislation); *see also Air Pollution Control Com'n of Colo. Dept. of Health v. Colo.-Ute Elec. Ass'n, Inc.,* 672 P.2d 993, 997 (Colo.1983)(a challenge to a regulation that had since been repealed was moot).

[4] ¶ 15 Where a claim is moot on appeal, we decline to address its merits, and instead dismiss the claim. *See USAA v. Parker,* 200 P.3d 350, 356 (Colo.2009); *Campbell v. Meyer,* 883 P.2d 617, 618 (Colo.App.1994).

### A. Amendment 20

¶ 16 The Providers and the Patients contend that article XVIII, section 14, of the Colorado Constitution created the rights to dispense and to receive marijuana for medical use, as well as the right to be free from seizure of any property that is owned or used in connection with medical marijuana use or distribution. They maintain that their rights have been violated by the County's de facto ban on medical marijuana when it approved its zoning ordinance in 2009. They also contend that the County has deprived them of these rights without due process and in violation of their equal protection rights.

¶ 17 To the extent that these challenges state a claim for prospective declaratory and injunctive relief, we conclude that they are moot in light of the Code's express grant of authority to local governments to regulate existing and new dispensaries within their jurisdiction as of July 1, 2010.

■ ¶ 18 Even if we assume that article XVIII, section 14 creates a constitutional right to distribute marijuana for medical use and to receive it from a provider of one's choice, such rights are not unfettered. *See Beinor,* 262 P.3d at 975 (Amendment 20 "was not intended to create an unfettered right to medical use of marijuana"). In addition to defining the limited circumstances in which a patient may legally use medical marijuana, section 14 expressly requires the General Assembly to define terms used in Amendment 20 and to implement the section's provisions. Colo. Const. art. XVIII, § 14(8). Section 14 also requires "the state health

agency" to promulgate implementing regulations. Colo. Const. art. XVIII, § 14(9).

¶ 19 As discussed, in July 2010, the General Assembly exercised its authority to regulate medical marijuana dispensaries. *See* ch. 355, secs. 1–19, 2010 Colo. Sess. Laws 1648–90. The current statutory framework requires that any facilities providing medical marijuana to eligible patients be licensed by both state and local authorities, and specifically allows local governments, including counties, to prohibit the licensing of dispensaries. §§ 12–43.3–106, –202, –301, –310, C.R.S.2012.

¶ 20 Here, the Patients and the Providers request declaratory and injunctive relief regarding the County's decision to prohibit dispensaries within unincorporated Jefferson County in April 2010. If granted, however, such relief would have no practical legal effect on the parties' current rights to operate a dispensary or procure marijuana from a specific dispensary, in light of the Code's provisions (1) permitting the County to enact its July 2010 ban on dispensaries in unincorporated Jefferson County and (2) requiring existing and new dispensaries to operate their businesses in accordance with applicable state or local laws. Thus, even if there were no ban in unincorporated Jefferson County, the Providers nonetheless would have needed to apply and be approved by a local licensing authority within the County under section 12–43.3–301, regardless of any approval of their use prior to July 2010. Accordingly, even if the County wrongfully prohibited the operation of the Providers' dispensary in April 2010, they would still be required to obtain county approval under the Code. Because of the County's 2010 decision to ban medical marijuana dispensaries in unincorporated Jefferson County, the Providers cannot obtain such approval. Accordingly, the claims of the Providers and the Patients for injunctive and declaratory relief are moot.

### B. Section 38–1–101

■ ¶ 21 In the alternative, the Patients and the Providers assert that their claims are not moot, because section 38–1–101, C.R.S. 2012, grandfathers the lawful operation of

Footprints, making its operation lawful notwithstanding the provisions of the Code and the Jefferson County resolution. We disagree.

■ ¶ 22 Counties have broad land use planning authority. *Colo. Mining Ass'n v. Bd. of Cnty. Comm'rs,* 199 P.3d 718, 731 (Colo.2009). Section 38–1–101(3)(a) limits this power by prohibiting a local government from enacting or enforcing an ordinance, resolution, or regulation in such a way that terminates or eliminates by amortization a nonconforming property use that was lawful at its inception. *See JAM Rest., Inc. v. City of Longmont,* 140 P.3d 192, 197 (Colo.App. 2006).

■ ¶ 23 Even if we assume section 38–1–101(3)(a) applies to this case, the provision protects only nonconforming uses that were lawful at the inception or enforcement of a local government's ordinance or regulation. *Id.; see also Jackson & Co. (USA), Inc. v. Town of Avon,* 166 P.3d 297, 299 (Colo.App.2007)(nonconforming use is one which lawfully existed before enactment of zoning ordinance).

¶ 24 The Providers maintain that their operation of a dispensary was de facto lawful after Amendment 20 passed. However, nothing in Amendment 20 eliminates a county's zoning or licensing authority, which must not conflict with other state law. *See Voss v. Lundvall Bros., Inc.,* 830 P.2d 1061, 1066 (Colo.1992). In section V of this opinion, we affirm the Board's conclusion that Footprints was in violation of zoning ordinances at the time of its inception. Thus, the County's reliance on its ODP supports the conclusion that the Providers' dispensary was not lawful in 2009, and, therefore, there was no basis for it to be lawfully grandfathered under section 38–1–101(3)(a). Accordingly, any claim for prospective relief is moot in light of the enactment of the Code.[2]

### III. Equitable Estoppel

¶ 25 The Providers contend that the trial court erred in dismissing their equitable estoppel claim because the Colorado Government Immunity Act (CGIA) does not apply to claims seeking injunctive and declaratory, rather than monetary, relief. We disagree.

### A. Standard of Review

■ ¶ 26 We review de novo a trial court's interpretation of the applicability of the CGIA to a particular case. *Moran v. Standard Ins. Co.,* 187 P.3d 1162, 1164 (Colo.App. 2008).

### B. Analysis

■ ¶ 27 The CGIA, sections 24–10–101 to –120, C.R.S.2012, bars claims brought against the state "which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." § 24–10–105(1), C.R.S.2012. Neither the form of relief requested in the claim, nor the form of the claim itself, is determinative in the applicability of the CGIA. *Colo. Dep't of Transp. v. Brown Group Retail, Inc.,* 182 P.3d 687, 690 (2008). Whether the CGIA applies, "ultimately turns on the source and nature of the government's liability, or the nature of the duty from the breach of which liability arises." *Id.*

¶ 28 The doctrine of equitable estoppel applies where a plaintiff detrimentally relies on a defendant's misstatement of fact. *Bd. of Cnty. Commis. v. DeLozier,* 917 P.2d 714, 716 (Colo.1996). Accordingly, a claim of equitable estoppel lies in tort. *Id.; Allen Homesite Grp. v. Colo. Water Quality Control Comm'n,* 19 P.3d 32, 35 (Colo.App.2000).

■ ¶ 29 Here, the Providers brought an equitable estoppel claim based on alleged actions and representations by the County, which according to the Providers, led them to reasonably believe that a dispensary was a permitted use of their property. Accordingly, their claim could have lain in tort, and is therefore barred by the CGIA. *See DeLozier,* 917 P.2d at 716. Although the Patients and the Providers sought nonmonetary relief, their claim is still barred by the CGIA because the nature of the damages sought is immaterial in determining whether a claim could lie in tort. *Brown Group Retail, Inc.,*

---

**2.** For the above reasons, we further conclude that the County did not violate section 38–1– 101(3)(a) when it interpreted the development plan.

182 P.3d at 691. Thus, the trial court did not err in dismissing the claim pursuant to the CGIA.

### IV. Money Damages

¶ 30 The Providers also contend that the trial court erred in dismissing their money damages claims for the County's violations of their due process, equal protection, and article XVIII, section 14, rights under the Colorado Constitution.[3] We disagree.

¶ 31 Even if we were to assume that the Providers' constitutional rights were violated between October 2009, when the dispensary opened for business, and the effective date of the Code, July 1, 2010, we discern no implied cause of action that entitles them to damages.

¶ 32 In *Board of County Commissioners v. Sundheim*, 926 P.2d 545, 550 (Colo.1996), the supreme court held that the due process clause of the Colorado Constitution, article II, section 25, does not create an implied cause of action in damages.

¶ 33 Because the Colorado Constitution does not contain an explicit equal protection clause, equal treatment under the laws is a right under the due process clause of article II, section 25. *Mayo v. Nat'l Farmers Union Prop. & Cas. Co.*, 833 P.2d 54, 56 n. 4 (Colo.1992).

¶ 34 *Sundheim* thus precludes the Providers' contentions that they are entitled to money damages for any state due process and equal protection violations.

¶ 35 Nor do we discern a right of action in damages in the language of article XVIII, section 14. *See Sundheim*, 926 P.2d at 550 ("In no way does article II, section 6, obligate Colorado courts to create remedies where none currently exist.").

¶ 36 The trial court thus did not err in dismissing these claims.

---

**3.** The Providers solely sought relief under the Colorado Constitution. If they had sought damages and costs for violations of federal constitutional rights, the proper course, as the trial court noted, would have been to file a 42 U.S.C. § 1983 action. *See Sclavenitis v. City of Cherry*

### V. C.R.C.P. 106 Review

¶ 37 The Providers next contend that the Board abused its discretion and exceeded its authority in concluding that a dispensary was not a permitted use under the County's zoning resolution and the shopping center's ODP. Specifically, they contend that the Board impermissibly based its decision on a de facto ban on dispensaries. Because the Board reasonably concluded that a dispensary was not a use expressly contemplated by the zoning resolution, and not a use analogous to other permitted uses in the ODP, we discern no abuse.

### A. Standard of Review

¶ 38 Under C.R.C.P. 106(a)(4), a trial court's review of an agency's judicial or quasi-judicial decision is "limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I); *accord Van Sickle v. Boyes*, 797 P.2d 1267, 1272 (Colo.1990). In conducting our review, we stand in the shoes of the trial court and review the agency's action. *See Woods v. City & Cnty. of Denver*, 122 P.3d 1050, 1053 (Colo.App.2005).

¶ 39 An agency abuses its discretion if its decision is not reasonably supported by any competent evidence in the record or if the agency has misconstrued or misapplied applicable law. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 900 (Colo.2008).

¶ 40 Generally, a reviewing court should defer to the construction of a statute by the administrative officials charged with its enforcement. If there is a reasonable basis for an administrative board's interpretation of the law, we may not set aside the board's decision. *Lieb v. Trimble*, 183 P.3d 702, 704 (Colo.App.2008).

*Hills Vill. Bd. of Adjustment & Appeals*, 751 P.2d 661, 665 (Colo.App.1988) ("Plaintiffs can seek money damages to vindicate violations of federal constitutional rights resulting from zoning decisions pursuant to 42 U.S.C. § 1983.").

### B. Analysis

¶ 41 The Providers' dispensary was located in a planned development zone district. The zoning resolution provides that a planned development zone may include uses of any nature, including commercial uses. Zoning Resolution, 18.B.1 (May 20, 2008). The permitted uses and standards for a particular planned development zone district, however, are those which were approved by the BOCC and set forth in an ODP. *Id.* at 18.B.2.

¶ 42 Here, the ODP for the shopping center, approved in 1992, provides a list of permitted uses, including, in relevant part: medical offices and/or clinics; retail sales and services establishments; drug stores; medical supplies distribution; and medical equipment, sales, and services. The ODP does not expressly allow medical marijuana dispensaries.

¶ 43 In response to the Providers' appeal to the notice of zoning violation it received, the zoning administrator initially determined that a medical marijuana dispensary was not a permitted use in the shopping center's planned development zone district for two reasons. First, he determined that marijuana dispensaries were not a use contemplated by the BOCC when it approved the ODP in 1992. Second, he concluded that a dispensary was not a use analogous to other specifically enumerated uses in the ODP. He maintained that it was not a retail goods or services business because it was not open to the general public for sales, not a drug store because it lacked a pharmacist, and not a medical office or clinic because it lacked a medical professional.

¶ 44 At the Board's hearing on the Providers' appeal, evidence was presented that two other businesses operating in the shopping center, a pet grooming shop and a Brazilian jujitsu studio, had not received zoning violations but also were not expressly permitted uses under the ODP.

¶ 45 The Providers first contend that, because the Board found these uses analogous to permitted uses in the ODP, it acted arbitrarily in refusing to do the same for the dispensary.

¶ 46 However, they have not provided, and we have not found, any support for the proposition that because an agency determines that a particular use that is not listed in a zoning plan is analogous to other expressly permitted uses, other requests to allow operation of businesses with analogous uses must be granted.

¶ 47 Rather, in our C.R.C.P. 106 review, the inquiry turns on whether the Board arbitrarily concluded that a medical marijuana dispensary was not analogous to other permitted uses.

¶ 48 Here, in addition to the zoning administrator's testimony, the following evidence was presented to the Board. Licensed patients receive a recommendation, rather than a prescription, from their doctors to receive medical marijuana. The Providers provided marijuana to patients by appointment only. In addition to the distribution of marijuana, they provided various services to patients, including acupuncture, massage, and errand services. They also provided information to patients concerning the use of medical marijuana. The dispensary appeared from the storefront as a retail business rather than a physician's office, however. Although Giuliani had previously worked in health care services, he was not a licensed pharmacist or physician.

¶ 49 We conclude that the record supports as reasonable the Board's determination that a medical marijuana dispensary is not substantially similar to a medical clinic, a drugstore, a medical equipment or supply store, or a general retail store. We therefore must defer to the Board's finding that a medical marijuana dispensary was not analogous to a listed permitted use in the ODP.

¶ 50 The Providers alternatively contend that the Board abused its discretion in basing its affirmance of the zoning violation, in part, on its finding that the 1992 ODP did not contemplate medical marijuana dispensaries.

¶ 51 However, the Board's conclusion was not based exclusively on these grounds. Therefore, because reasonable grounds exist to support the board's order, we perceive no abuse of discretion.

## VI. Additional Constitutional Challenges

 ¶ 52 We do not address other unpreserved constitutional challenges that the Patients and Providers now raise. Specifically, they contend that the County's de facto ban amounted to a regulatory taking of their leasehold interest under article II, section 15, of the Colorado Constitution. Although they cursorily raised this issue in their complaint, they did not respond to the County's counterarguments to the trial court, and further stated that any regulatory takings claim was "subsumed by the more basic question" of interpreting article XVIII, section 14. We therefore agree with the trial court that the Providers voluntarily abandoned this contention. *See Nat'l Acceptance Co. of Am. v. Mars,* 780 P.2d 59, 60 (Colo.App.1989) (claim raised in complaint but not further litigated was abandoned).

¶ 53 The Patients and the Providers also raise on appeal an argument they raised for the first time in their reply brief in response to the County's motion for summary judgment: that Giuliani was deprived of a fundamental liberty interest in pursuing his profession of choice as a medical marijuana distributor. We do not consider arguments raised for the first time in a summary judgment reply brief in the district court. *Grohn v. Sisters of Charity Health Servs. Colo.,* 960 P.2d 722, 727 (Colo.App.1998).

¶ 54 Finally, the Patients and the Providers argue in their supplemental brief, for the first time, that we should strike down section 12–43.3–106, C.R.S.2012, because it constitutes impermissible special legislation under article V, section 25, of the Colorado Constitution. The Patients and the Providers did not argue this contention within the context of mootness. Accordingly, the County did not have the opportunity to brief the substantive issue; and therefore, we will not address it. *See People v. Czemerynski,* 786 P.2d 1100, 1107 (Colo.1990)(arguments raised for the first time in reply briefs, to which the other party cannot respond, will not be considered by an appellate court); *Grohn,* 960 P.2d at 727 ("Arguments raised for the first time in a reply brief before a trial court are not properly before an appellate court where the opposing party was unable to respond.").

¶ 55 The appeal is dismissed with respect to the Providers' and the Patients' claims for declaratory and injunctive relief. In all other respects, the judgment is affirmed.

Judge RUSSEL and Judge J. JONES concur.