2015 COA 96M

**Jennifer ACKERMAN, David Scheuermann, Forrest Hudspeth, and Adam Kinnard, Plaintiffs–Appellees,**

v.

**CITY AND COUNTY OF DENVER, Colorado, Defendant–Appellant.**

**Court of Appeals No. 13CA1561**

Colorado Court of Appeals,
Div. VII.

Announced July 16, 2015

As Modified on Denial of Rehearing
September 10, 2015

Gerash Steiner, PC, Daniel P. Gerash, Denver, Colorado; Law Office of Samuel Ventola, Samuel Ventola, Denver, Colorado, for Plaintiffs–Appellees Jennifer Ackerman and David Scheuermann

Bachus & Schanker, L.L.C., Adrienne M. Tranel, Denver, Colorado, for Plaintiffs–Appellees Forrest Hudspeth and Adam Kinnard

D. Scott Martinez, City Attorney, Barry A. Schwartz, Assistant City Attorney, Jamesy C. Owen, Assistant City Attorney, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE NAVARRO

¶ 1 In this personal injury action, defendant, the City and County of Denver (Denver), brings this interlocutory appeal seeking review of the trial court's order denying its motion to dismiss the consolidated tort actions brought by plaintiffs, Jennifer Ackerman, Forrest Hudspeth, Adam Kinnard, and David Scheuermann. The trial court denied Denver's motion seeking dismissal for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to –120, C.R.S. 2014. We conclude that our supreme court's decision in *Burnett v. State Department of Natural Resources*, 2015 CO 19, 346 P.3d 1005 (*Burnett II*), requires the reversal of the court's decision. Therefore, we reverse and remand with directions.

I.   Factual and Procedural Background

¶ 2 While attending a concert in the amphitheater at Denver's Red Rocks Park, plaintiffs were struck and injured by rocks that fell from "Creation Rock," a rock formation that abuts one side of the amphitheater.

Plaintiffs filed separate actions against Denver and others alleging, as pertinent here, that Denver negligently allowed trespassers to cause the rock fall, Denver negligently maintained the amphitheater such that rocks could be kicked loose by trespassers or otherwise fall into the amphitheater, and Denver knew or should have known of the risk of such rock fall.

¶ 3 Denver moved to dismiss plaintiffs' complaints pursuant to C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the CGIA. Denver argued that natural conditions such as rocks were not "public facilities" for which its immunity under the CGIA had been waived. Consequently, Denver argued that Creation Rock was a "natural condition of ... unimproved property" for which there was no waiver of immunity under section 24–10–106(1)(e), C.R.S.2014.

¶ 4 Plaintiffs argued that their injuries resulted from a dangerous condition of the amphitheater, a public facility and a public building, which was caused by improper maintenance of the facility. Plaintiffs argued that the amphitheater was "improved property" and that its physical location in the park caused their injuries.

¶ 5 After the parties had engaged in substantial discovery, Denver submitted as supplemental authority a recent decision by a division of this court in *Burnett v. State Department of Natural Resources*, 2013 COA 42 (*Burnett I* ), *aff'd*, *Burnett II*. In *Burnett I*, ¶ 2, the plaintiff was injured when she was struck by a tree branch while sleeping in her tent in a designated campsite at a state park. The tree branch fell from a tree that was adjacent to the campsite and was located on unimproved property. *Id.* at ¶¶ 2, 11. The division held that the tree was not a "public facility" and that trees were not integral to the use and enjoyment of the campsite. *Id.* at ¶¶ 9, 17. The division noted that, while the campsite where the plaintiff was injured was within the improved area of the park, the trees adjacent to the campsite were in an unimproved area. *Id.* at ¶ 11. After observing that the General Assembly had expressly retained immunity for natural conditions in unimproved areas, the division ultimately concluded that the State retained immunity for injuries from branches falling from trees in unimproved parts of a state park. *Id.* at ¶¶ 11, 25.

¶ 6 The trial court held an evidentiary hearing as contemplated by the decision in *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924–25 (Colo. 1993). *See also Medina v. State*, 35 P.3d 443, 452 (Colo.2001) (trial court must resolve any factual dispute upon which the existence of its jurisdiction under the CGIA may turn). The court then issued a written decision finding that Denver's immunity had been waived.

¶ 7 As pertinent here, the trial court found that Creation Rock and other large rock formations surrounding the amphitheater were an integral component of the public facility and were essential for the intended use of the facility. The court also found that a contractor hired by Denver to inspect and maintain the large rock formations had altered the conditions of the formations by taking actions to stabilize or remove any loose rocks.

¶ 8 Applying the rationale of *Rosales v. City & County of Denver*, 89 P.3d 507 (Colo. App.2004), *overruled by Burnett II*, the trial court concluded that Creation Rock was an integral and essential component of the amphitheater.[1] The court also concluded that Creation Rock, despite maintaining a natural appearance, was "improved" property for purposes of section 24–10–106(1)(e) due to the contractor's actions in stabilizing and removing loose rocks. Based on such improvement and the integration of Creation Rock as an essential component of the amphitheater, the court distinguished the decision in *Burnett I* and decided that Creation Rock was not a "natural condition of unimproved property."[2]

---

1. The trial court did not have the benefit of *Burnett v. State Department of Natural Resources*, 2015 CO 19, 346 P.3d 1005 (*Burnett II*), which overruled *Rosales v. City & County of Denver*, 89 P.3d 507 (Colo.App.2004), after the trial court's ruling. We shall discuss *Rosales* in detail in Section III, *infra*.

2. The court also found that Creation Rock posed an unreasonable risk to the health and safety of the public, Denver knew or should have known of this risk, and Denver was the proximate cause of the dangerous condition because it negligently maintained Creation Rock.

¶ 9 Consequently, the trial court determined that Denver's immunity from suit had been waived under section 24-10-106(1)(e) and that the court had jurisdiction to hear the case.

¶ 10 Denver now brings this interlocutory appeal pursuant to section 24-10-108, C.R.S. 2014.

## II. Legal Standards

¶ 11 Section 24-10-106(1)(e) waives a public entity's immunity in an action for injuries resulting from:

> A dangerous condition of any ... public facility located in any park or recreation area maintained by a public entity.... Nothing in this paragraph (e) ... of this subsection (1) shall be construed to prevent a public entity from asserting sovereign immunity for an injury caused by the natural condition of any unimproved property, whether or not such property is located in a park or recreation area or on a highway, road, or street right-of-way.

¶ 12 Whether immunity has been waived under the CGIA is an issue of subject matter jurisdiction that is resolved in accordance with C.R.C.P. 12(b)(1). *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo.2000). The burden of proving jurisdiction is on the plaintiff, and the trial court's findings of fact supporting a determination under the CGIA will not be reversed unless clearly erroneous. *Trinity*, 848 P.2d at 924–25 (the trial court is the fact finder regarding jurisdictional determinations under the CGIA, and appellate review is highly deferential). The interpretation of a statutory waiver provision is a question of law that is subject to de novo review. *See Daniel v. City of Colorado Springs*, 2014 CO 34, ¶¶ 9–10, 327 P.3d 891. Because the CGIA derogates the common law, we strictly construe its grants of immunity and, in turn, broadly construe its waivers of immunity. *Burnett II*, ¶ 11 (plurality opinion).

## III. *Burnett II* Decision and Supplemental Briefs

¶ 13 After the parties had filed their briefs on appeal, the Colorado Supreme Court issued its opinion in *Burnett II*. In a split decision, the court analyzed the "natural condition" provision in section 24-10-106(1)(e).

¶ 14 A plurality of the court determined that the "natural condition" provision was ambiguous and, therefore, looked to legislative history to ascertain and effectuate the General Assembly's intent. *Id.* at ¶¶ 18, 23 n. 4. The plurality concluded that a native tree that originated on unimproved property constituted a "natural condition of ... unimproved property." *Id.* at ¶¶ 40, 43, 45. In a concurring opinion, Justice Eid disagreed with the plurality's reliance on legislative history but reached the same result by interpreting the phrase "of unimproved property" in accordance with its plain and ordinary meaning. *Id.* at ¶¶ 49–51 (Eid, J., concurring in the judgment). Consequently, the plurality and the concurrence determined that the State retained immunity when a branch from the tree fell on Burnett while she was sleeping in a tent in a designated campsite at a state park. *Id.* at ¶¶ 3–5, 45.

¶ 15 In addition, a majority of the court—the plurality joined by the dissent—agreed that the two-part test delineated in this court's decision in *Rosales* should be overruled. *Id.* at ¶¶ 19, 44, 46, 68. That test asked whether a tree was an "integral" part of the public facility and whether the tree was "essential" for the public facility's intended use—such that the tree should be considered a component of the public facility. *Id.* at ¶ 44. The plurality noted that the questions posed by this test did not originate in the language of the CGIA and that "by expanding the definition of 'public facility' to incorporate natural objects," the court in *Rosales* had impermissibly narrowed the circumstances in which public entities retained immunity "for injuries caused by dangerous natural conditions." *Id.* at ¶¶ 44, 46. The plurality explained that the supreme court had implicitly rejected this expanded definition of public facility in *St. Vrain Valley School District RE–1J v. A.R.L.*, 2014 CO 33, 325 P.3d 1014, where it held that "facility" applied to "permanent bricks-and-mortar structures ... as well as to collections of individual items that, considered together, promote a broader, common purpose." *Burnett II*, ¶ 46 (quoting *St. Vrain*, ¶ 19); *see St. Vrain*, ¶ 19 (citing as an example "a collection of individual pieces of playground equipment that together promote children's play").

¶ 16 In light of the decision in *Burnett II,* we requested that the parties file simultaneous supplemental briefs limited to the following issues: (1) the effect, if any, of *Burnett II* on the resolution of this appeal; and (2) whether a remand to the trial court is necessary in light of *Burnett II.* In their supplemental brief, plaintiffs argue that *Burnett II* is inapplicable because Creation Rock is improved property that is no longer in its natural condition. Plaintiffs also assert that a remand is necessary only if we reverse the trial court's decision. In its supplemental brief, Denver argues that *Burnett II* is dispositive of the issues raised in this case and it requires the reversal of the trial court's decision. Denver also maintains that a remand is not necessary because all relevant evidence was already presented to the trial court. We agree with Denver that *Burnett II* is dispositive in this case and requires reversal. Further, for reasons we explain in Part IV.D., a remand is not necessary on the issue of Denver's immunity under section 24–10–106(1)(e). We conclude, however, that a remand is appropriate to determine Denver's immunity under section 24–10–106(1)(c), the "public building" provision of the CGIA.

### IV. Application of *Burnett II*

¶ 17 In *Burnett II,* the plurality considered a report regarding governmental immunity that had been prepared by a Legislative Council committee and submitted to the General Assembly prior to the enactment of the CGIA. *Burnett II,* ¶ 20. The report set forth proposed legislation that closely resembled the version of the CGIA subsequently adopted by the General Assembly. *Id.* at ¶ 21.

¶ 18 The plurality noted that the report expressed the legislative intent underlying the natural condition provision in four ways:

- It distinguished between dangerous conditions arising from man-made and natural objects.
- It suggested that immunity turns on the precise mechanism of the injury.
- It expressed a clear intent to exempt public entities from a duty to maintain any natural conditions.
- Its stated policy goals included encouraging public entities to open up to the public unimproved, government-owned property without exposing the entities to the burden and expense of defending claims brought by individuals who are injured while using the property.

*Id.* at ¶ 23.

¶ 19 As pertinent here, it is not disputed that the rocks causing plaintiffs' injuries originated from Creation Rock. It is also not disputed that plaintiffs were located in the amphitheater, which is a public facility, when they were hit by the rocks.

¶ 20 Further, it is not disputed that Denver hired a contractor to stabilize and remove loose rocks from Creation Rock. The trial court found that the contractor had "altered the conditions of the rocks by 'shotcreting,' bolting, cable lashing, rebar, pinning, buttressing, hand-scaling, and removing loose rocks."

### A. Creation Rock is Not Part of the Amphitheater

¶ 21 The trial court found that the public facility at issue was the amphitheater and, relying on *Rosales,* the court concluded that Creation Rock was an integral and essential part of the amphitheater. In particular, the court found that Creation Rock, along with the surrounding rock walls, provided the unique acoustics and aesthetic setting that made the amphitheater a desirable location for attending a concert. Similarly, in their answer brief on appeal, plaintiffs argue that the trial court properly found that Creation Rock was an integral part of the amphitheater and was essential to its use as an amphitheater.

¶ 22 In their supplemental brief, however, plaintiffs argue that the overruling of *Rosales* is irrelevant. According to plaintiffs, Creation Rock forms the north wall of the amphitheater and it and the other large rock formations surrounding the amphitheater are responsible for creating the amphitheater's unique setting and acoustics. Plaintiffs assert that, without these rock formations, there would be no amphitheater. Thus, they conclude that "Creation Rock is the Amphitheater," which is a public facility.

¶ 23 Although plaintiffs disclaim reliance on *Rosales,* their analysis in their supplemental brief is not meaningfully different from the two-part test announced in *Rosales,* which was rejected in *Burnett II.* Plaintiffs' claim that Creation Rock is the amphitheater rests on the conclusion that Denver incorporated this natural object into the public facility "in such a manner that it becomes an integral part of the facility and is essential for the intended use of the facility." *Rosales,* 89 P.3d at 510. Because plaintiffs' argument is rooted in case law that has been overruled, we must reject their conclusion that Creation Rock is part of the amphitheater and is a public facility.

## B. Creation Rock is Not Improved Property

¶ 24 Plaintiffs argue alternatively that Creation Rock is improved property that is not in its natural condition. In particular, plaintiffs contend that the work Denver's contractor has performed to stabilize and remove loose rocks from Creation Rock render Creation Rock improved property. While plaintiffs' argument has some force, we conclude that is foreclosed by *Burnett II.*

¶ 25 We first note that the supreme court in *Burnett II* did not state explicitly whether a decision that property is improved is a finding of fact or conclusion of law. Nonetheless, it is apparent from the court's discussion that it viewed this determination as a legal conclusion subject to de novo review. The plurality declared that the facts in *Burnett II* were "undisputed," thereby indicating that the debate over whether the tree was a natural condition of unimproved property was not a factual dispute but a legal one. *Burnett II,* ¶ 11. The plurality then analyzed the issue as a matter of statutory interpretation, a legal question. *See, e.g., id.* at ¶¶ 12, 41. In her concurring opinion, Justice Eid took the same approach. *See id.* at ¶¶ 49–53 (Eid, J., concurring in the judgment). Thus, following the analysis in *Burnett II,* an appellate court should consider de novo whether, under the facts found by the trial court, the property at issue qualifies as a natural condition of unimproved property within the meaning of the CGIA. *See also Daniel,* ¶¶ 15–22 (treating the question whether a public parking lot is a "public facility" under the CGIA as a matter of statutory interpretation).

¶ 26 In *Burnett II,* the State had pruned the trees from which the branch fell and injured the plaintiff. *Burnett II,* ¶ 41. The plurality determined that (1) a public entity does not have a duty to maintain natural features in a park; (2) such a duty does not arise based on proximity or contiguity to improved property; and (3) the public entity does not assume such a duty even when it chooses to maintain unimproved property to protect the public health and safety. *Id.* at ¶¶ 32–33. The plurality concluded that the State's actions in pruning the trees did not alter the natural condition of the trees. *Id.* at ¶ 41. The plurality declined to create a rule under which limited maintenance for public health and safety "would transform natural conditions of unimproved property into improved property." *Id.* Justice Eid's concurring opinion, by not discussing the tree pruning, implicitly agreed that the pruning was irrelevant to whether the tree was a natural condition of unimproved property. *Id.* at ¶¶ 49–53 (Eid, J., concurring in the judgment).

¶ 27 We agree with plaintiffs that Denver engaged in more extensive maintenance than the State did in *Burnett II.* The applicable rationale, however, is the same. Denver's attempts to mitigate any safety hazards posed by Creation Rock are analogous to the State's efforts to protect the public's safety by pruning the trees in *Burnett II.* In neither case should the government's voluntary efforts to protect the public from a natural condition render the government liable for injuries that occur when those efforts are inadequate. Accordingly, Denver's maintenance did not transform Creation Rock into improved property.

¶ 28 We acknowledge that, at some point, a government's alterations to a natural object or condition might be so far-reaching as to result in improved property under the CGIA. For instance, Denver does not appear to dispute that the seating and stage areas of the amphitheater constitute improved property. Creation Rock, however, is a natural sandstone monolith that rises three hundred feet and extends the entire length of the

amphitheater on the north side. As the trial court stated, Creation Rock maintains a "natural appearance." The mitigation measures were not of such a scale that they altered the natural condition of Creation Rock.

¶ 29 We are sympathetic to plaintiffs' concerns, and we do not discount the severe nature of their injuries. To hold that Denver waived immunity due to its rock-mitigation measures, however, "would be contrary to the public health and safety" because it would discourage Denver from undertaking any safety measures whatsoever or would discourage Denver from "opening and improving park lands for the public to enjoy." *Id.* at ¶¶ 41–42 (plurality opinion); *see also id.* at ¶ 47 ("Burnett's injuries are tragic, but eliminating governmental immunity in this case would only compound the tragedy by sidestepping legislative intent and providing a disincentive for the government to facilitate access to public lands.") (plurality opinion).

¶ 30 Consequently, we conclude that Creation Rock is a natural condition of unimproved property.

### C. Location of Amphitheater next to Creation Rock Does Not Alter our Analysis

■ ¶ 31 The plurality in *Burnett II* also concluded that the natural condition provision governs any injuries arising from naturally occurring features of parks without regard to their proximity to man-made objects. *Id.* at ¶ 25. It noted that nothing in the legislative council report suggested that a person's location on a man-made improvement shifts to the public entity the risk of injuries caused by dangerous natural conditions. *Id.* at ¶ 28. In support, the plurality cited several cases from other jurisdictions holding that it was the precise mechanism of the injury, rather than the plaintiff's location when the injury occurred, that controlled whether immunity had been waived. *Id.* at ¶¶ 27, 29–30. In her concurring opinion, Justice Eid agreed with this conclusion, stating

that "it is the origin of the natural condition that caused the injury, rather than the plaintiff's location, that controls the immunity inquiry." *Id.* at ¶ 52 (Eid, J., concurring in the judgment).[3]

¶ 32 Therefore, we similarly conclude that plaintiffs' location in the amphitheater does not support a waiver of immunity under section 24–10–106(1)(e) for injuries caused by a natural condition, i.e., a rock falling from Creation Rock.

### D. No Remand Necessary As To Section 24–10–106(1)(e)

¶ 33 We conclude that a remand to the trial court for additional findings regarding Denver's immunity under section 24–10–106(1)(e) is not necessary.

¶ 34 In their supplemental brief, plaintiffs assert that a remand is necessary if we reverse the trial court's decision. The parties, however, have already participated in an extensive three-day evidentiary hearing. At the hearing, Denver relied on the decision in *Burnett I*, and the trial court addressed it in its decision. Thus, the parties had both the opportunity and the incentive to address the issues raised in *Burnett I*. In fact, the parties and the court specifically addressed whether Creation Rock was part of a public facility or a natural condition of unimproved property. In affirming *Burnett I*, the supreme court in *Burnett II* did not address or identify new issues, but merely clarified the applicable legal analysis.

¶ 35 Consequently, a remand on the question of Denver's immunity under section 24–10–101(1)(e) is unwarranted.

### V. Public Building Exception

■ ¶ 36 Finally, plaintiffs argue in their supplemental brief that Denver's immunity is waived under section 24–10–106(1)(c), the "public building" provision of the CGIA. We will not address this contention on the merits

---

3. To the extent plaintiffs rely on *Medina v. State*, 35 P.3d 443 (Colo.2001), their reliance is misplaced. That case involved section 24–10–106(1)(d)(I), C.R.S.2014, which addresses the waiver of immunity for injuries resulting from a "dangerous condition of a public highway road, or street which physically interferes with the movement of traffic on the paved portion." As the *Burnett II* plurality explained in distinguishing *Medina*, section 24–10–106(1)(e) "does not carve out a waiver for conditions that 'physically interfere' with the use of the enumerated public facilities." *Burnett II*, ¶ 40 n. 6.

because it is outside the scope of the issues for which we requested supplemental briefing.

¶ 37 We limited supplemental briefing to the effect of *Burnett II. Burnett II* did not discuss the public building provision of the CGIA, and that provision is in no way related to issues addressed in the *Burnett II* decision. And plaintiffs did not rely on the public building provision of the CGIA in their answer brief. Thus, we conclude that the application of the public building provision is not properly before us for review. *See Kilpatrick v. Indus. Claim Appeals Office,* 2015 COA 30, ¶ 35, 356 P.3d 1008 (declining to address an issue that was outside the limited scope of the supplemental briefing order); *Giuliani v. Jefferson Cnty. Bd. of Cnty. Comm'rs,* 2012 COA 190, ¶ 54, 303 P.3d 131 (same); *see also People v. Valles,* 2013 COA 84, ¶ 9, —— P.3d —— (declining to consider appellee's assertion because it was not raised in the answer brief but instead was raised for the first time during oral argument).

¶ 38 Still, we recognize that plaintiffs relied in part on the public building provision to oppose Denver's motion to dismiss in the trial court. The trial court did not reach this question because it concluded that Denver had waived immunity under section 24–10–106(1)(e). In light of our holding that Denver did not waive immunity under section 24–10–106(1)(e), we must remand for the trial court to consider whether Denver waived immunity under the public building provision, section 24–10–106(1)(c).

### VI. Attorney Fees

 ¶ 39 Denver requests an award of the attorney fees it incurred in defending against this action in both the trial court and on appeal. Because we remand for the trial court to determine whether Denver waived immunity under section 24–10–106(1)(c), we do not resolve this question. If, on remand, the trial court determines that Denver did not waive immunity and thus is entitled to dismissal of plaintiffs' claims, the court should consider whether Denver is entitled to an award of attorney fees incurred in the

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

trial court and this court. *See* section 13–17–201; *Crandall v. City & Cnty. of Denver,* 238 P.3d 659, 663 (Colo.2010); *Curtis v. Hyland Hills Park & Recreation Dist.,* 179 P.3d 81, 85 (Colo.App.2007); *Smith v. Town of Snowmass Vill.,* 919 P.2d 868, 873 (Colo.App.1996).

### VII. Conclusion

¶ 40 The trial court's order is reversed. The case is remanded to the trial court with directions to resolve plaintiff's claim that Denver waived immunity under section 24–10–106(1)(c).

Richman and Ney *, JJ., concur

