The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 21, 2022

## 2022COA79

**No. 21CA0439, *Stickle v. County of Jefferson* — Torts —
Premises Liability; Government — Colorado Governmental
Immunity Act — Immunity and Partial Waiver — Dangerous
Condition of a Public Building**

The plaintiff fell and was injured in a county's public parking

structure. She brought this premises liability claim against the

county based on the incident. The county moved to dismiss,

asserting immunity from the plaintiff's claim under the Colorado

Governmental Immunity Act (CGIA). Relatedly, the county asserted

that the CGIA's waiver of immunity for a dangerous condition of a

public building does not apply here. The trial court disagreed and

denied the motion to dismiss.

Answering a novel question in Colorado, a division of the court

of appeals holds that a public parking structure can be a public

building under the CGIA and that the parking structure here

qualifies as such. The division also rejects the county's contention that the defect alleged here was not a dangerous condition because it was solely attributable to the design of the parking structure. Therefore, the division concludes that the county waived its immunity, affirms the trial court's order, and remands for further proceedings.

COLORADO COURT OF APPEALS     **2022COA79**

Court of Appeals No. 21CA0439
Jefferson County District Court No. 20CV30105
Honorable Russell Klein, Judge

Beverly Stickle,

Plaintiff-Appellee,

v.

County of Jefferson, Colorado,

Defendant-Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE NAVARRO
Lipinsky and Kuhn, JJ., concur

Announced July 21, 2022

Silvern & Bulger, P.C., Thomas A. Bulger, Lakewood, Colorado, for Plaintiff-Appellee

Kimberly S. Sorrells, County Attorney, Eric Butler, Assistant County Attorney, Rebecca Klymkowsky, Assistant County Attorney, Golden, Colorado, for Defendant-Appellant

¶ 1    Beverly Stickle was injured in the Jefferson County Courts and Administration Building's north parking structure (the parking structure) after she lost her balance and fell on a step down from a walkway.  As a result, she brought this premises liability claim against Jefferson County (the County).  The County moved to dismiss, asserting immunity from Stickle's claim under the Colorado Governmental Immunity Act (CGIA).  Among other things, the County argued that the CGIA's waiver of immunity for a dangerous condition of a public building does not apply here.  *See* § 24-10-106(1)(c), C.R.S. 2021.  The trial court disagreed and denied the motion to dismiss.

¶ 2    Answering a novel question in Colorado, we hold that a public parking structure can be a public building under the CGIA and that the parking structure here qualifies as such.  We also reject the County's contention that the defect alleged here was not a dangerous condition because it was solely attributable to the design of the parking structure.  Therefore, we conclude that the County waived its immunity, affirm the court's order, and remand for further proceedings.

## I. Factual and Procedural History

¶ 3      The parking structure has two levels and is detached from the Courts and Administration Building. A photograph of the parking structure is reproduced below:[1]



¶ 4      On February 6, 2018, Stickle parked her car on the second level of the parking structure and walked to the Courts and

---

[1] The photograph depicts a roughly triangular, two-level parking structure with vehicles parked on the second level and stairs leading from the first level to the second level.

Administration Building.  Later in the day, she returned to her car to retrieve some paperwork.

¶ 5       To return to the second level of the parking structure, Stickle walked up the stairs nearest to the Courts and Administration Building, heading east.  The top of the stairs is level with a walkway that runs along the western edge of the parking structure, as shown in the photograph reproduced below:



Separating the walkway from the parking surface, however, is a raised curb requiring a step down.  On the day of the incident, the

walkway and the parking surface were the same shade of charcoal gray, except for the edge of the curb, which was painted yellow. Photographs of the walkway and parking surface as they appeared in February 2018 are reproduced below:



As the trial court aptly put it, while it is obvious coming from the parking surface that there is a curb, "it is not obvious coming the other way from the stairs and walkway that there is a step down, even though the yellow line is bright and looked recently painted (in the photographs)."

¶ 6    After Stickle climbed the stairs and began walking to her car, she did not see the step down from the walkway to the parking surface. She fell and suffered a compound fracture of her arm.

¶ 7    Based on this incident, Stickle sued the County under the Colorado Premises Liability Act. *See* § 13-21-115, C.R.S. 2021. The County moved to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1). The County argued, among other things, that Stickle could not show that it had waived its immunity under the CGIA's waiver provision for a dangerous condition of a public building because (1) the parking structure is not a public building and (2) the step down from the walkway was not a "dangerous condition" under the CGIA because the matching color of the walkway and the parking surface was a design choice for which immunity is not waived. *See* § 24-10-103(1.3), C.R.S. 2021.

¶ 8    After conducting an evidentiary hearing pursuant to *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), the trial court issued a written order rejecting the County's arguments, concluding that the County had waived

5

immunity under the CGIA's public building provision, and thus denying the motion to dismiss.[2]

## II. Public Building

¶ 9     The County first contends that the trial court erred by concluding that the parking structure is a "public building" under the CGIA.  We disagree.

### A.     Additional Facts and Procedural History

¶ 10     On the question of whether the parking structure is a public building, the parties presented evidence of the following.

¶ 11     The parking structure was constructed between 1990 and 1991 and opened to the public in 1992.  It is made of concrete and intended to be permanent.  The first level is completely covered, has a fully enclosed utility room, has concrete or masonry pillars that support the second level, and is surrounded by a "knee wall." Thus, although the first level is covered, it is not "completely closed in."  The second level and the stairs leading to the second level are uncovered.

---

[2] The trial court rejected Stickle's arguments that the County had waived immunity under other CGIA provisions, and she does not appeal the court's rulings as to those other provisions.

¶ 12     The parking structure is equipped with electricity for lighting and vehicle charging, and it has a sprinkler system.  It does not have heating, air conditioning, or other temperature control systems.  Finally, the parking structure — including the step where Stickle fell — had to comply with a "building code."

¶ 13     Based on this evidence, and considering the analogous case of *Pierce v. City of Lansing,* 694 N.W.2d 65 (Mich. Ct. App. 2005), the trial court ruled as follows:

> The Court finds the analysis by the Michigan Court of Appeals to be persuasive and consistent with traditional dictionary definitions.  Merriam-Webster defines a building as "a usually roofed and walled structure built for permanent use (as for a dwelling)."  *See* http://merriam-webster.com/dictionary/building.  Black's Law Dictionary defines a building as "[a] structure with walls and a roof, esp. a permanent structure."  Black's Law Dictionary (11th ed. 2019).  Indeed, the definition of "building" in Black's Law Dictionary includes the additional term of "accessory building" which is defined as "[a] building separate from but complementing the main structure on a lot, such as a garage."  *Id.*
>
> The Court has considered the North Parking Structure in light of the evidence presented at the Hearing . . . .  The structure is made of concrete or masonry materials and is permanent.  While it is not fully closed-in, the

lower level is surrounded by walls and appears to consist of permanent support columns. The facility has electricity/lighting, and a fire suppression system. While the North Parking Structure lacks water or HVAC, not every building has HVAC and/or water. Defendants [sic] argue that the roof is just another parking lot. However, decisions on how to utilize roof-top space should not be determinative as to whether a structure is a "building[,]" any more than a roof-top deck or roof-top garden would prevent a structure from being a building.

Therefore, based on the foregoing, the Court finds that the North Parking Structure is a "public building" for the purposes of the CGIA.

### B.  Pertinent Principles

¶ 14    Whether the CGIA protects a government from suit is a question of subject matter jurisdiction. *Maphis v. City of Boulder*, 2022 CO 10, ¶ 13. The plaintiff bears the burden to prove that the government has waived its immunity, "but this burden is relatively lenient, as the plaintiff is afforded the reasonable inferences from her undisputed evidence." *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 11.

¶ 15    The application of sovereign immunity presents a mixed question of law and fact. *Maphis*, ¶ 14. The trial court makes "factual findings about its ability to hear the case," *Dennis*, ¶ 9, and

8

resolves "[a]ny factual dispute upon which the existence of jurisdiction may turn." *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384 (Colo. 1997). On review, we will defer to the trial court's factual findings unless they are clearly erroneous. *Ackerman v. City & Cnty. of Denver*, 2015 COA 96M, ¶ 12. Once any questions of fact are resolved, we review de novo the question of governmental immunity, as the only remaining matter is one of statutory interpretation. *Maphis*, ¶ 15.

¶ 16     Our task in construing a statute is to give effect to the General Assembly's intent. *In re Estate of Colby*, 2021 COA 31, ¶ 13. To do so, we begin with the statute's plain language, reading the words and phrases in context and construing them according to their common usages. *Id.* If the statutory language is clear and unambiguous, we apply it as written without resorting to other means of discerning legislative intent. *Id.*; *Coyle v. State*, 2021 COA 54, ¶ 10. Further, "[b]ecause the CGIA derogates the common law, we construe its immunity provisions strictly but waiver provisions broadly." *Maphis*, ¶ 17.

¶ 17     The CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in

9

tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." § 24-10-106(1); *see also Hernandez v. City & Cnty. of Denver*, 2018 COA 151, ¶ 5. "Sovereign immunity is waived," however, in an action for injuries resulting from "[a] dangerous condition of any public building." § 24-10-106(1)(c). The waiver of immunity in section 24-10-106(1)(c) relates to a physical condition of the building, not to uses of the building or activities conducted therein. *See Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo. 1992), *overruled on other grounds by Bertrand v. Bd. of Cnty. Comm'rs*, 872 P.2d 223 (Colo. 1994).

### C. Application

¶ 18    The County does not dispute that the parking structure is "public." Rather, the County contends that it is not a "building."

¶ 19    The CGIA does not define "public building" or "building." We have not found any published case in Colorado analyzing the meaning of "building" in the CGIA. Still, relying on the plain meaning of the statutory language, and with the aid of well-recognized dictionaries, we conclude that the parking structure is a "public building" under section 24-10-106(1)(c) of the CGIA. *See Dennis*, ¶ 23 (construing the CGIA and advising that "[t]o determine

10

the plain and ordinary meaning of words, we may look to the dictionary for assistance").

¶ 20    "Building" means

> 1: a thing built: a: a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure — distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.

Webster's Third New International Dictionary 292 (2002).[3]

"Building" has also been defined as a "structure with walls and a roof, esp. a permanent structure." Black's Law Dictionary 242 (11th ed. 2019). In fact, a garage is a type of "accessory building," a building "separate from but complementing the main structure on a lot." *Id.*

---

[3] We note that the Delaware Supreme Court has used this definition of "building" in construing Delaware's statutory waiver of sovereign immunity for a public building. *See Moore v. Wilmington Hous. Auth.*, 619 A.2d 1166, 1174 (Del. 1993) ("The proper construction of the noun 'building' is driven primarily, if not exclusively, by the ordinary dictionary meaning of the term . . . .").

¶ 21    This ordinary understanding of "building" is hardly new.  Long

ago, our supreme court addressed the legislature's decision to add

the term "building" to the burglary statute.  Relying in part on a

dictionary definition of the term, the court explained as follows:

> [A] building is generally considered to be an edifice, erected by art, and fixed upon or over the soil . . . .  Thus, now all stationary structures within Colorado, no matter of what substance they may be constructed, are within the term building, so long as they are designed for use in the position in which they are fixed. . . .  [W]e believe it was the legislative intent that a building is "a structure which has a capacity to contain, and is designed for the habitation of man or animals, or the sheltering of property."

*Sanchez v. People*, 142 Colo. 58, 59-60, 349 P.2d 561, 561-62

(1960) (citations omitted).[4]

¶ 22    Turning back to this case, we conclude that the parking

structure falls within the ordinary meaning of "building."  The

parking structure is constructed and designed to be permanent.

---

[4] The County argues that this definition is inapposite because *Sanchez* involved the meaning of "building" in the context of the criminal code.  But the *Sanchez* court did not interpret a statutory definition of "building" unique to the criminal code.  Instead, the court considered the ordinary meaning of the term, with the aid of a dictionary and cases from other states.  *See Sanchez v. People*, 142 Colo. 58, 59-60, 349 P.2d 561, 561-62 (1960).

The first level has a roof and is more or less enclosed. The entire structure is designed to store and shelter property (vehicles). On this last point, we disagree with the County that the parking structure does not shelter property, at least in part. As the trial court found, "if it rains and the rains falls straight down, the vehicles . . . in the lower level will stay mostly dry." It is also clear from the photos that such vehicles would enjoy some shelter from the sun. In any event, a plain purpose of the parking structure is to store property, a common feature of a building. Hence, consistent with any of the definitions we have mentioned, the parking structure is a building. *See also Pierce*, 694 N.W.2d at 68-69 (concluding that a public parking structure fell within the plain and ordinary meaning of the term "building" as used in a public building exception to governmental immunity).

¶ 23    Moreover, evidence presented at the *Trinity* hearing indicated that the parking structure had to comply with the "building code." Both the County and the City of Golden, where the parking structure sits, have adopted the International Code Council's 2018 International Building Code (IBC). *See* Jefferson County Supplement to the 2018 International Building Code 2 (effective

July 1, 2021), https://perma.cc/UFY8-DQE3; Golden Municipal Code § 15.08.010, https://perma.cc/4GZS-JF35. The IBC defines a "building" as "[a]ny structure utilized or intended for supporting or sheltering any occupancy." IBC § 202, https://perma.cc/2ZV7-M5CA. The IBC makes clear that occupancy includes "motor-vehicle-related occupancies" generally and "public parking garages" specifically. *See* IBC §§ 311.3, 406.4-.6; *see also* IBC § 406.5 (repeatedly referring to a public "open parking garage" as a "building"). So the parking structure is a "building" under the applicable building code, consistent with the plain meaning of the term used in the CGIA.

¶ 24 We are not persuaded to reach a different conclusion by the County's focus on the waiver provision in section 24-10-106(1)(e). Under section 24-10-106(1)(e), sovereign immunity is waived for a dangerous condition of "any public hospital, jail, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility." The County's argument about this provision, as we understand it, goes like this:

(1) before a 1986 amendment, "'public parking facilities' were included in the waiver of immunity under section 24-10-106(1)(e)";

(2) the 1986 amendment removed "public parking facilities" from this waiver provision and instead waived immunity for a "public facility" located in a park or recreation area;

(3) courts have construed "public facility" in section 24-10-106(1)(e) to include a public parking lot if it is located in a park or recreation area;

(4) like a public parking lot, the parking structure here is a "public facility," but it is not located in a park or recreation area and, thus, immunity was not waived under section 24-10-106(1)(e); and

(5) to construe a parking structure to also be a "public building" under section 24-10-106(1)(c) would "virtually eliminate any distinction between the words 'building' and 'facility,'" contrary to the legislature's intent.

¶ 25    As an initial matter, we disagree with the County's understanding of the pre-1986 version of section 24-10-106(1)(e) and the effect of the 1986 amendment.  Before the amendment, "public parking facilities" were *excluded* from the waiver of immunity for a dangerous condition of a public facility.  *See* Ch. 166, sec. 5, § 24-10-106, 1986 Colo. Sess. Laws 876; *Daniel v. City of Colorado Springs*, 2014 CO 34, ¶ 19.  That is, the prior version of section 24-10-106(1)(e) expressly retained immunity for public parking facilities.  *See Daniel*, ¶ 19 ("[U]nder the prior version of the recreation area waiver, public entities *waived* immunity for injuries resulting from a dangerous condition of 'any' public facility (i.e., all public facilities), but *retained* their immunity under the exception if injuries occurred in a public parking facility.").  By removing the exception for public parking facilities, the 1986 amendment waived immunity for certain facilities that had previously been subject to it, including a public parking lot located in a park or recreation area. *Id.* at ¶¶ 19-20.  As a result, the 1986 amendment lessened immunity for public parking facilities under section 24-10-106(1)(e).

¶ 26    More fundamentally, while we accept the County's position that a public parking structure — like a public parking lot — can be

16

a "public facility" under section 24-10-106(1)(e), we reject the notion that a public parking structure cannot also be a "public building" within the meaning of section 24-10-106(1)(c). Our supreme court has explained that "facility" can include a "building":

> Under section 24-10-106, the term "facility" is used both in the recreation area waiver (subsection (1)(e)) and in a waiver that is applicable to injuries resulting from the operation and maintenance of certain public facilities (subsection (1)(f)). Importantly, the term "building" is used in a waiver applicable to injuries resulting from a "dangerous condition of any public building" (subsection (1)(c)). The legislature's use of "facility" in two waivers and "building" in a third indicates that it did not intend the term "facility" to be limited to a "building."
>
> Because we assume that the General Assembly made intentional distinctions in the language it chose when crafting the CGIA, we conclude that the term "facility" has a different meaning than the term "building." As ordinary usage suggests, "building" has a more specific meaning than "facility"; indeed, a "building" can be a *type* of "facility."

*St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*, 2014 CO 33, ¶¶ 23-24. Hence, the terms "facility" and "building," though they mean different things, are not mutually exclusive. Because a "building" can be a type of "facility," a structure can be both. *See id.* at ¶ 24

17

("[T]he term 'facility' can be interpreted to include *both* a prototypical bricks-and-mortar structure, as well as a collection of items that serve a greater purpose . . . .").

¶ 27    Consequently, a public parking facility that is a public building falls within the waiver provision of section 24-10-106(1)(c). A public parking facility that is not a public building (i.e., a public parking lot) falls within the waiver provision of section 24-10-106(1)(e) if it is located in a park or recreation area (or otherwise satisfies that provision).

¶ 28    Given all this, we agree with the trial court that the parking structure is a public building under section 24-10-106(1)(c). Our conclusion gives effect to "'one of the basic but often overlooked' purposes of the CGIA" — to allow people "to seek redress for injuries caused by a public entity." *Daniel*, ¶ 13 (citation omitted).

### III.    Dangerous Condition

¶ 29    The County next contends that, even if the parking structure is a public building, the County nonetheless retains immunity from Stickle's claim because her injury did not result from a "dangerous condition" as defined in the CGIA. Specifically, the County argues that the alleged defect that caused her injury could not be a

18

dangerous condition because it was solely attributable to the parking structure's design. We are not convinced.

### A. Additional Facts and Procedural History

¶ 30    The County is responsible for the parking structure's maintenance. To fulfill this responsibility, the County adopted a five-year overarching plan called the "Major Maintenance Repair and Replacement" Plan (the Maintenance Plan).

¶ 31    Per the Maintenance Plan, the County undertook a "resurfacing project" or "topping project" in 2017 that involved adding a new, more durable topping to the walkway, curb, and parking surface to prevent corrosive substances from seeping into the concrete. That is, the new topping material, which was charcoal gray, was different from what had existed before.

¶ 32    In its motion to dismiss, the County argued that the color of the walkway and the parking surface, which allegedly caused Stickle's injuries, was not related to the construction or maintenance of the parking structure but was instead a design choice for which its immunity is retained.

¶ 33    The trial court disagreed and decided that a dangerous condition existed that "stems from the decision to finish both the

19

walkway and the drive surface with the same color," which created a "curb-illusion." Although the court believed that this condition was not attributable to a "failure of maintenance" (i.e., a negligent omission in maintaining the facility), the court did not specify whether this condition resulted from a negligent act in constructing or maintaining the facility. Nor did the court address whether the condition was the result of the design of the facility.

## B. Law and Analysis

¶ 34 To reiterate, when the underlying facts are undisputed, we review de novo questions of governmental immunity. *Smokebrush Found. v. City of Colorado Springs*, 2018 CO 10, ¶ 17. In particular, we review de novo whether the facts show a "dangerous condition" under the CGIA. *Maphis*, ¶ 16.

¶ 35 In pertinent part, the CGIA defines a "dangerous condition" as

> a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by *the negligent act or omission of the public entity or public employee in constructing or maintaining such facility*. . . . A dangerous condition shall not exist *solely because the design of any facility is inadequate*."

20

§ 24-10-103(1.3) (emphasis added). In its only challenge to whether a dangerous condition existed here, the County argues that the condition was not the result of an act or omission in constructing or maintaining the parking structure but was solely the result of a "design choice" — "the County's decision to use the same colored material for the walking and parking surfaces" of the parking structure.

¶ 36    "'Maintenance' means the act or omission of a public entity or public employee in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure." § 24-10-103(2.5). "'Maintenance' does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility." *Id.*

¶ 37    The CGIA does not define "constructing" and "design," but our supreme court has shed light on their meanings. "Constructing" means "to form, make or create by combining parts or elements," which includes facilities "as originally constructed but also encompasses permanent or temporary alterations to the facility made during its ensuing lifetime in service to the public." *Padilla v.*

21

*Sch. Dist. No. 1*, 25 P.3d 1176, 1182 & n.5 (Colo. 2001) (quoting Webster's Third New International Dictionary 489 (1993)). "Design" means "to conceive or plan out in the mind." *Swieckowski*, 934 P.2d at 1386.

¶ 38    Relying on these definitions, Stickle says the dangerous condition that led to her fall was caused by negligent maintenance, whereas the County claims it was the result of inadequate design.

¶ 39    We conclude that the dangerous condition resulted from maintenance, at least in part. The use of the same topping material to resurface the walkway, curb, and parking surface was an act in maintaining the parking structure (i.e., an act done for the purpose of maintenance). The undisputed facts establish that this topping material was added as part of the Maintenance Plan for the parking structure. One purpose of applying this material was "to prevent water, mag chloride and salt from infiltrating into the concrete because those substances will degrade the rebar and the concrete itself." In other words, the new topping material helped preserve the facility from decline or failure, which falls within the CGIA's definition of maintenance. *See* § 24-10-103(2.5). And while the County refers to its decision to use the same topping material on

22

the walkway, curb, and parking surface as a "choice of color" and a "decision to use the same color" on all these surfaces, little evidence suggested that the County chose the material because of its color.[5] Rather, the evidence showed that County chose the topping material primarily because of its ability to preserve the facility from decline or failure (i.e., for maintenance purposes).

¶ 40      Moreover, although we appreciate that a public entity must make intentional decisions as part of its plan to maintain a facility, we decline to endorse the view that every such decision relates to the "design of [the] facility." § 24-10-103(1.3).  Still, even if, as the County argues, the topping material choice and "the use of the same color topping for the walkway and driving surfaces . . . were contemplated design details" of the 2017 resurfacing project, the evidence shows that this decision was also made to preserve the parking structure from decline or failure, an act of maintenance under the CGIA's definition.  Consequently, we cannot say that the dangerous condition created by the decision to apply the same

---

[5] When asked about the color of the new topping material, a county witness speculated that the "new one may have been darker, darker aggregate to help the snow melt, etc."

topping material to the walkway, curb, and parking surface was *solely* attributable to design. *See id.*; *Medina v. State*, 35 P.3d 443, 459 (Colo. 2001) ("The design of a public roadway will often contribute to injury, but it is only when the dangerous condition is solely attributable to design that the state is immune.").[6]

¶ 41 Accordingly, we affirm, on somewhat different grounds, the trial court's conclusion that Stickle's injury was caused by a dangerous condition and, consequently, the County waived its immunity from Stickle's claims.

IV. Conclusion

¶ 42 The order is affirmed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE LIPINSKY and JUDGE KUHN concur.

---

[6] We find *Medina v. State*, 35 P.3d 443, 459 (Colo. 2001), useful on this point because the same definition of "dangerous condition" applies to the "public building" and the "public highway" waiver provisions of the CGIA. *See* § 24-10-106(1)(c), (d)(I), C.R.S. 2021.